IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RASEAN MALONE,** <br><br> *Petitioner*, <br><br> v. <br><br> **SUPERINTENDENT BARRY SMITH, et al.,** <br><br> *Respondents*. | Case No. 2:19-cv-02800-JDW |

## MEMORANDUM

Rasean Malone has filed a number of objections to the Report and Recommendation that Magistrate Judge Elizabeth Hey issued on December 14, 2020. The Court will adopt Judge Hey's R&R because, after review, the Court concludes that it correctly identifies the issues that Mr. Malone's petition for habeas corpus raises, it identifies the correct standard, and it applies the facts to the law correctly. The Court addresses each of Mr. Malone's objections below.

**I.   BACKGROUND**

    **A.   The Crime At Issue**

Shortly before 2 a.m. on July 1, 2013, a car pulled in front of Hakim Parker and Tyrell Woodson as they were walking down the street. About 15 seconds later, three men approached Mr. Parker and Mr. Woodson, and one man, later identified as William Harrison, pulled a gun. Mr. Parker and Mr. Woodson ran in opposite directions. While running home, Mr. Parker heard multiple gunshots. A few minutes after the confrontation began, police responded to a radio call,

and they found Mr. Woodson lying on the ground with a gunshot wound to his head. He died later that morning.

That evening, Philadelphia police officers were looking for a man in connection with an unrelated crime. They had a description, and they approached a man matching that description while he stood on a porch with a group of other men. The men ran from the porch into the house and hid. The officers apprehended Mr. Harrison, who was the man who fit the description. Officer George Gee identified Mr. Malone as one of the men with Mr. Harrison at the time.

On October 10, 2013, Philadelphia police detectives interviewed Mr. Parker and showed him several photographic arrays. Mr. Parker identified Mr. Malone. He circled, dated, and signed the photograph and wrote "without" next to Mr. Malone's name to indicate that Mr. Malone did not have a gun in his hand when Mr. Malone first approached him. At trial, Mr. Parker backed away from the information that he provided officers, but he acknowledged that the signature and date on the photo arrays were his handwriting. Mr. Parker also selected Mr. Harrison's photo from a photo array and identified Mr. Harrison as the man who pointed a gun at him and at Mr. Woodson.

Mr. Parker also provided information from still photos taken from security camera footage of the incident. Those videos show Mr. Malone walking towards Mr. Parker and reaching towards his waistband. As Mr. Parker turns and runs, Mr. Malone stops, pulls out a gun, widens his stance, and then fires.

On October 19, 2013, Philadelphia Police arrested Dasaahn McMillan for firearm possession. McMillan then told police he had information about Mr. Woodson's death. At the time, Mr. McMillan lived with his girlfriend and her daughter Raven Williams, who was dating Mr.

Malone. Mr. McMillan provided police with evidence that implicated Mr. Malone in Mr. Woodson's shooting.

**B.     Procedural History**

On April 27, 2015, a jury convicted Mr. Malone of second-degree murder, criminal conspiracy, robbery, carrying a firearm on public streets, possession of an instrument of crime, and attempted murder. The trial court sentenced Mr. Malone to life without parole for second-degree murder, with concurrent terms for other convictions. The Superior Court affirmed the convictions but vacated the sentence. On June 6, 2016, the trial court reinstated the sentences but imposed no sentence for robbery, with all terms running concurrently.

On June 19, 2017, Mr. Malone filed a *pro se* petition pursuant to Pennsylvania's Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541 *et seq.* On December 5, 2017, he filed an amended petition, this time through counsel. The trial court held an evidentiary hearing and denied the petition on May 2, 2018. The Superior Court affirmed on April 16, 2019.

On June 26, 2019, Mr. Malone filed a *pro se* petition for writ of habeas corpus requesting that the Court review his conviction based on seven claimed instances of ineffective assistance of counsel. After retaining the same counsel who represented him in PCRA proceedings, Mr. Malone amended his petition to add an eighth ground for review based on the sufficiency of the evidence relied upon to convict him. The Court referred the matter to the Honorable Elizabeth T. Hey for a Report and Recommendation. Judge Hey recommended that the Court deny Mr. Malone's petition for writ of habeas corpus. Mr. Malone objected to Judge Hey's R&R, and the objections are ripe for review.

II.     **LEGAL STANDARD**

The federal habeas statute, 28 U.S.C. § 2254, limits a district court's review to whether a state court's adjudication was the product of an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1)-(2). A federal court must presume that a state court correctly resolved factual issues, but a petitioner can rebut that presumption with clear and convincing evidence. *See Werts v. Vaughn*, 228 F 3d 178, 196 (3d Cir. 2000).

III.    **DISCUSSION**

A.      **Sufficiency Of Evidence**

Judge Hey correctly determined that Mr. Malone's sufficiency-of-the-evidence argument is untimely and fails on the merits. Mr. Malone does not dispute that he first raised this argument after the limitations period expired. But he invokes equitable tolling because he first filed *pro se* and then retained counsel. That argument alone does not make out a claim for equitable tolling, however. *Cf. Merritt v. Blaine*, 326 F.3d 157, 169-170 (3d Cir. 2003) (mistaken belief in timely filing not extraordinary circumstance). That is particularly the case here, where Mr. Malone hired the same lawyer who represented him in PCRA proceedings. He could have hired her earlier, and his failure to do so does not excuse his obligation to comply with statutory deadlines. In addition, the fact that counsel worked on the PCRA proceedings mitigates against any finding of equitable tolling because she was already familiar with the case. She did not have to wait until the last day to file an amended petition.

In any event, as Judge Hey concluded, Mr. Malone's claim challenges the weight and credibility of the witness testimony, not its sufficiency. Even Mr. Malone's own objection points

4

out that he sought to make the Commonwealth's evidence "unreliable." (ECF No. 26 at 3.) That is, he wants to call into question its credibility. That is not the basis for a sufficiency-of-the-evidence challenge. *See Tibbs v. Fla.*, 457 U.S. 31, 46 (1982).

### B.      Ineffective Assistance Of Counsel

In reviewing claims for ineffective assistance of counsel, a petitioner must show both deficient performance and that the deficient performance prejudiced his defense. *See Strickland v. Washington* 466 U.S. 668, 687 (1984). Prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different." *Id.* at 694.

#### 1.      Failure to call alibi witness

At trial, Mr. Malone asserted an alibi defense. Ms. Williams, his girlfriend, testified that he was routinely home at night, caring for her during a difficult pregnancy. So, according to her, Mr. Malone could not have committed the crime. The Commonwealth demonstrated that there were several calls from Ms. Williams to Mr. Malone the night of the shooting, which undermined her testimony. She tried to explain that discrepancy away by testifying that Mr. Malone shared a cell phone with Jamar Williams (Ms. Williams and Mr. Williams are not related). But the defense did not call Mr. Williams to testify. As Judge Hey concluded, that decision does not justify a finding of ineffective assistance of counsel, for two reasons.

*First*, Mr. Malone waived any challenge to his counsel's failure to call Mr. Williams when he engaged in a detailed colloquy with the trial court about his counsel's decision not to call witnesses. That colloquy included discussion of Mr. Williams. Mr. Malone cannot now revisit that waiver by claiming it prejudiced him. *See Frazier v. Sec'y Pa. Dep't of Corr.*, 663 Fed. App'x 211, 215 (3d Cir. 2016).

*Second*, the PCRA court made a reasonable determination that Mr. Williams' testimony was not credible and that its absence was not prejudicial to Mr. Malone. That was a reasonable determination of the facts, and this Court is not in a position to second-guess the trial court's credibility determination. Mr. Malone takes issue with the trial court's finding of fact because, he says, the trial court comes from a different background than he does. But that difference in background does not make the trial court's factual determination unreasonable, and it certainly does not rise to the level of clear and convincing evidence that Mr. Malone would need to rebut the presumption that the trial court's factual decision was correct.

## 2. Failure to object to Officer Gee's testimony

Mr. Malone claims that trial counsel was ineffective for failing to object to Officer Gee's testimony that Mr. Malone fled when the police approached the group that included Mr. Malone and Mr. Harrison. The Commonwealth had a legitimate basis to introduce the evidence: both to connect Mr. Malone and Mr. Harrison and to demonstrate some evidence of Mr. Malone's consciousness of guilty. As Judge Hey concluded, the trial court would have overruled any objection to this evidence because, under Pennsylvania evidentiary law, evidence of flight is admissible to establish consciousness of guilt. *See Commonwealth v. Johnson*, 838 A.2d 663, 681 (Pa. 2003). The trial court also sought to limit any risk of guilt by association by instructing the jury that the incident in which Mr. Harrison was arrested was unrelated to the present murder, that Mr. Malone was not charged for what happened on that day, and that it could only be used to show consciousness of guilt. Mr. Malone takes issue with that instruction and claims that it suggested his involvement with another crime. The Court disagrees. Mr. Malone reads far too much into the instruction, which provided an appropriate caution to the jury. And, Mr. Malone has not shown that anything his counsel did would have changed the outcome of the case.

### 3. Failure to obtain medical records and call expert witness

Mr. Malone claims his trial counsel was ineffective for failing to review medical records and by not obtaining a medical expert to testify that Malone would have been unable to chase after the victim because he had an old injury. But Mr. Malone has not identified any expert who was prepared to offer that testimony. His proposed expert only said that he could not tell if Mr. Malone faced physical limitations at the time of the PCRA petition and, if he were asked pre-trial, he **might** have been in a better position to make that determination. But he did not say that he could have made that determination, let alone that Mr. Malone actually faced any relevant physical limitations in 2013.

Applying *Strickland*, Pennsylvania courts require that a petitioner establish that an expert witness was *available* to testify in support of his defense. *See Commonwealth v. Johnson*, 966 A.2d 533, 536 (Pa. 2009). The PCRA court therefore made a reasonable determination that Mr. Malone's claim about potential expert testimony at the time of trial was speculative. The PCRA court's decision that Mr. Malone cannot show prejudice from a failure to call a nonexistent expert witness is a reasonable application of *Strickland*.

### 4. Failure to communicate plea offer

Mr. Malone claims his counsel was ineffective for failing to properly communicate a plea offer, which rendered his rejection of the offer unknowing and unintelligent. During trial, the trial court independently conducted a detailed colloquy explaining to Mr. Malone the pros and cons of the offer. Then, during PCRA proceedings, the PCRA court heard testimony from Mr. Malone and his trial counsel and concluded that Mr. Malone's testimony about the plea offer, borne out of regret for the trial result, was not credible. That factual determination was reasonable, and nothing in the record before Judge Hey or this Court overcomes the presumption that it was reasonable.

7

### 5. Impeachment of Mr. McMillan

Mr. Malone complains that his counsel was ineffective for failing to develop evidence to impeach Mr. McMillan's testimony about when he first met Mr. Malone. He argues that the state courts underrated the power of impeachment evidence based on small lies. The Superior Court made a reasonable determination that Mr. Malone's impeachment evidence was weak or non-existent as to this fact. It also reasonably determined that any potential contradiction had minimal impeachment value. Mr. Malone has not pointed to any evidence to support his claim that Mr. McMillan lied, let alone done anything to show that such a small inconsistency would have changed the outcome of his trial.

### 6. Reasonable doubt hypothetical in closing

Mr. Malone claims his counsel utilized a defective reasonable doubt hypothetical in his closing argument, which prejudiced his defense. Malone cites *Brooks v. Gilmore*, where the habeas court granted relief after it determined that a judge's defective hypothetical prejudiced the defendant, because it elevated the reasonable doubt standard. Civ. No. 15-5659, 2017 WL 3475475, at *2 (E.D. Pa. Aug. 11, 2017). The Court agrees with Judge Hey that this case is distinguishable from *Brooks*, because *Brooks* dealt with an improper jury instruction from a judge rather than by trial counsel.

The record as a whole demonstrates that any error in the hypothetical did not prejudice Mr. Malone. His counsel prefaced his hypothetical by cautioning the jury to abide by the judge's instructions on reasonable doubt, not his. Then, trial court gave the jury the proper instruction on reasonable doubt and told the jury that it was not bound by counsel's misstatements of the law. Together, those instructions cured any prejudice that might have come from counsel's hypothetical.

### 7. Cumulative impact

Mr. Malone has not shown that any supposed error by his trial counsel caused him prejudice, with the possible exception of the hypothetical in closing. But the Court has already concluded that that hypothetical did not prejudice him, and without any other prejudice, there is no accumulation of prejudice, as Judge Hey concluded.

## C. Certificate Of Appealability

Pursuant to United States Court of Appeals for the Third Circuit Local Rule 22.2, at the time a district court issues a final order denying a habeas petition, the district judge must determine whether a Certificate of Appealability should issue. Judge Hey recommends that the Court deny a certificate of appealability. The Court agrees with and adopts Judge Hey's analysis.

## IV. CONCLUSION

While in hindsight, Mr. Malone might disapprove of how his counsel defended him at trial, he has not shown that the Pennsylvania courts unreasonably applied federal law or made unreasonable factual determinations in considering any of his claims. The Court will therefore adopt Judge Hey's R&R and overrule Mr. Malone's objections. The Court will also not enter a Certificate of Appealability. An appropriate Order follows.

**BY THE COURT**:

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

April 6, 2021