**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RASEAN MALONE,** | : | **CIVIL ACTION** |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| **SUPERINTENDENT BARRY SMITH,** *et al.* | : | **No. 19-2800** |
| Respondents. | : | |

**BRIEF FOR AMICUS CURIAE**
**PENNSYLVANIA DISTRICT ATTORNEYS ASSOCIATION**

Petitioner was convicted in state court of second-degree murder and related offenses. In 2019, he filed a *pro se* habeas petition in federal court (ECF No. 1). He then retained counsel, who filed an amended petition (ECF No. 10). This Court dismissed the habeas petition on April 6, 2021 (ECF No. 31).

On appeal, petitioner retained new counsel, who filed two motions to remand the case. Petitioner sought to present new claims challenging: (1) trial counsel's failure to object to hearsay; (2) trial counsel's failure to object to other crimes evidence; (3) the Commonwealth's failure to disclose an alleged deal made with one of its witnesses, Dasaahn McMillan; and (4) the Commonwealth's failure to correct McMillan's allegedly false testimony. Respondents did not oppose his requests for a remand. Accordingly, the Third Court remanded the case to give this Court an opportunity to consider petitioner's forthcoming motion to amend his habeas petition. Malone v. Superintendent Houtzdale SCI, 2021 WL 8323790 (3d Cir. 2021).

Petitioner then filed two motions to amend his habeas petition. The first motion raised the claims presented to the Third Circuit (ECF No. 47). The second motion alleged for the first time that the Commonwealth had suppressed evidence implicating other people in the murder (ECF No.

53). After respondents summarily consented to the amendments (ECF No. 54-55), this Court

requested briefing from the parties on four procedural questions at issue in the case:

1. On the current record, including the Third Circuit's Order dated November 3, 2021 (ECF No 38), is this Court's Order dated April 6, 2021, a final judgment or an interlocutory order;

2. Related to the previous question, does Federal Rule of Civil Procedure 15 apply to the motions to amend, or does the Petitioner have to satisfy Federal Rule of Civil Procedure 60;

3. If Rule 60 applies, then has the Petitioner met his burden; and

4. If Rule 15 applies, then are the Petitioner's amendments futile, in light of the AEDPA's limits on successive petitions or its one-year statute of limitations.

(ECF No. 58). This Court also invited the Pennsylvania District Attorneys Association to file a

brief as amicus curiae (id.).

## DISCUSSION

**1.     This Court's April 6, 2021 order is a final judgment, not an interlocutory order.**

On April 6, 2021, this Court dismissed petitioner's habeas petition. Since that order

resolved all of the claims presented in petitioner's habeas petition and has not been disturbed by

the Third Circuit, the April 6th order is a final judgment.

This Court's order dismissing the habeas petition was unquestionably a final judgment

when it was entered on April 6th. A judgment is final if it "ends the litigation on the merits and

leaves nothing to do but execute the judgment." State Nat'l Ins. Co. v. Cnty. of Camden, 824 F.3d

399, 408 (3d Cir. 2016) (citation omitted); Gov't of Virgin Islands v. Rivera, 333 F.3d 143, 150

(3d Cir. 2003). In the habeas context, this means that the district court must either deny the petition

or order that the prisoner be released by a specified deadline. Prellwitz v. Sisto, 657 F.3d 1035,

1037 (9th Cir. 2011); cf. Christy v. Horn, 115 F.3d 201, 203 (3d Cir. 1997) (stay order was

interlocutory because the order "does not resolve the habeas case. It is not dispositive of any issue raised in Christy's habeas petition").

This Court's April 6th order did just that. This Court dismissed petitioner's habeas petition, finding each of his claims to be either meritless, or untimely and non-cognizable (ECF No. 30, 4-9). The order left this Court nothing to do but return the record to the state court. The order was therefore final. Indeed, the Third Circuit ordinarily has jurisdiction only to review "final decisions of the district courts." 28 U.S.C. § 1291. Accordingly, the Third Circuit would have had no jurisdiction over petitioner's case unless this Court's April 6th order was a final judgment. E.g., Stewart v. Superintendent Frackville SCI, No. 21-2027, ECF No. 8 (3d Cir. 2021) (dismissing appeal for lack of jurisdiction where there was no final judgment from the district court); Scott v. Fairton FCI, Warden, 379 F. App'x 155, 156-57 (3d Cir. 2010) (non-precedential) (dismissing appeal for lack of jurisdiction where the district court's order had not resolved Scott's amended habeas claims; the amended petition was filed *before* the original petition was dismissed and did not change Scott's legal claims).

The Third Circuit's remand left the April 6th order intact. The Third Circuit did not address any of the claims presented to this Court. Instead, it simply reserved review on petitioner's original claims until after his new motions have been resolved. Malone, 2021 WL 8323790, at *1.

In that sense, the Third Circuit's decision in United States v. Santarelli, 929 F.3d 95 (3d Cir. 2019), is easily distinguishable. There, while on appeal, Santarelli sought to raise a new habeas claim in the district court. The Third Circuit construed that request as a motion to amend the habeas petition pursuant to Fed.R.Civ.P. 15. Id. at 106. The Third Circuit acknowledged that, once an appeal is filed, it is ordinarily too late for the district court to consider a Rule 15 motion. Id. However, "[i]f . . . an appellate court vacates or reverses, in whole or in part, the district court's

3

denial of the initial habeas petition and remands the matter . . . the district court would again be vested with jurisdiction to consider" a motion to amend. Id.

Thus, Santarelli gives district courts jurisdiction to consider a motion to amend a habeas petition where the previously-issued final judgment of the district court *has* been disturbed. In Santarelli's case, that same Third Circuit opinion had reversed the district court's order for unrelated reasons and remanded the case for further proceedings. Id. at 103. That reversal permitted review under Rule 15. Id. at 106.

Here, however, the Third Circuit has not disturbed this Court's final judgment in the case. It did not address petitioner's original eight habeas claims at all, much less hint at whether those claims might warrant a certificate of appealability. Instead, the Third Circuit simply remanded the case to give this Court a chance to consider a filing that the parties represented as a district court motion.

While the Third Circuit did use the word "interlocutory" in remanding the case, the second half of the sentence makes it clear that the Third Circuit was addressing its own jurisdiction, not this Court's. Specifically, the Third Circuit said:

> A result of our ruling is to render the District Court's April 6, 2021 order interlocutory, such that it can be reviewed on appeal from any newly entered final judgment.

(Third Circuit Docket, ECF 17, 2). In this context, the Third Circuit used the term "interlocutory" merely to reserve its review of the case, not to direct this Court's disposition on the (then unfiled) motions. Therefore, this Court's April 6th order is still final.

## 2. Petitioner's new claims are a second or successive habeas petition.

This Court next asked if Rule 15 or Rule 60 of the Federal Rules of Civil Procedure governs petitioner's new claims (ECF No. 58, Question 2). Alternatively, this Court asked whether the new

claims are limited by AEDPA's rules on successive petitions (ECF No. 58, Question 4). We agree with the latter. As explained below, unless his final judgment is vacated, it is too late for petitioner to file a Rule 15 motion, and his new claims are not a proper subject for a Rule 60 motion. This means that petitioner's new claims can only be properly considered in a second or successive habeas petition.

### A.    Rule 15

Rule 15 does not govern petitioner's motions. Although Rule 15 ordinarily gives this Court the discretion to allow an amendment "when justice so requires," Fed.R.Civ.P. 15(a)(2), "the liberality of the rule is no longer applicable once judgment has been entered." Ahmed v. Dragovich, 297 F.3d 201, 207-08 (3d Cir. 2002). "At that stage, it is Rules 59 and 60 that govern the opening of final judgments." Id. at 208;[1] accord Garrett v. Wexford Health, 938 F.3d 69, 86 (3d Cir. 2019) ("In the post-judgment context, the narrow grounds for relief set forth in Rules 59 and 60 must guide a District Court's decision about whether an otherwise-final judgment should be disturbed."). As the Third Circuit explained, "[t]o hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." Ahmed, 297 F.3d at 208 (citation omitted).

To illustrate the reason for this cut off, it is useful to consider how Rule 15 would apply in the context of a civil trial, instead of a habeas case. There, the "final judgment" may be a verdict. Under those circumstances, it would be unreasonable to allow a plaintiff the same freedom to

---

[1] The inclusion of Rule 59 necessarily means that the Third Circuit contemplated motions filed before the time for an appeal had expired. Rule 59 motions carry a strict 28-day deadline, Fed.R.Civ.P. 59(e), while circuit courts allow 30 days to file a notice of appeal, F.R.A.P. 4(a)(1)(A).

amend his unsuccessful complaint to add new claims. Perhaps for that reason, the portion of Rule 15 that gives courts such broad discretion to grant amendments specifies that it applies to "amendments before trial."[2] Fed.R.Civ.P. 15(a) (capitalization omitted); see also Lacey v. City of Newark, 828 F. App'x 146, 150 (3d Cir. 2020) (non-precedential) ("A post-judgment motion to amend a complaint is properly construed as either a motion pursuant to Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure, depending upon when it was filed."); Burtch v. Milberg Factors, Inc., 662 F.3d 212 (3d Cir. 2011) ("[a]fter judgment dismissing the complaint is entered, "a party may seek to amend the complaint (and thereby disturb the judgment) only through Federal Rules of Civil Procedure 59(e) and 60(b)"); The Tool Box, Inc. v. Ogden City Corp., 419 F.3d 1084, 1087 (10th Cir. 2005) (finding that the district court could not consider a Rule 15 motion "unless the judgment was first vacated," and collecting cases supporting that conclusion); Lindauer v. Rogers, 91 F.3d 1355, 1357 (9th Cir. 1996) (refusing to consider a motion to amend after summary judgment was granted; "once judgment has been entered in a case, a motion to amend the complaint can only be entertained if the judgment is first reopened under a motion brought under Rule 59 or 60").

Construing petitioner's filings as Rule 15 motions would mean that the standard for finality is more lenient under AEDPA than in a more traditional civil case. But the opposite is true. See Gonzalez v. Crosby, 545 U.S. 524, 529 (2005) (because of the "new habeas restrictions introduced by AEDPA," the Rules of Civil Procedure apply in habeas proceedings "only 'to the extent that [they are] not inconsistent with' applicable federal statutory provisions and rules") (quoting 28

---

[2] While a separate portion of Rule 15 does allow plaintiffs "to raise an unpleaded issue" after judgment, that subsection appears to apply only when the issue was already "tried by the parties' express or implied consent." Fed.R.Civ.P. 15(b)(2); see also Brown v. Cooper Clinic, P.A., 734 F.2d 1298, 1301 (8th Cir. 1984) (explaining that the purpose of Rule 15(b)(2) is just "to bring the pleadings in line with the actual issues upon which the case was tried").

U.S.C. § 2254, Rule 11). "Prior to AEDPA, it was generally understood that there were no limitations on a prisoner's filing successive habeas petitions." Pridgen v. Shannon, 380 F.3d 721, 727 (3d Cir. 2004). "AEDPA changed the landscape in 1996 by severely limiting the number of successive habeas petitions a prisoner is entitled to file." Id. Congress made that change to prevent "piecemeal litigation" of federal habeas claims. Magwood v. Patterson, 561 U.S. 320, 334 (2010). Given AEDPA's concern with finality, it would make little sense to apply a looser interpretation of the amendment rule to federal habeas cases.

Therefore, Rule 15 does not apply to petitioner's new claims. Logically, petitioner cannot "amend" a habeas petition that has already been considered and dismissed. See United States v. Colon, 2016 WL 687183, at *5 (E.D. Pa. 2016) (Padova, J.) ("A district court cannot permit amendment of a habeas motion 'once judgment has been entered' on that motion.") (citation omitted); United States v. Tam, 2005 WL 1030197, at *2 (E.D. Pa. 2005) (Yohn, J.) (amendment of a federal habeas motion is "no longer possible once the motion has been decided on the merits"); see also Arrington v. United States, 2019 WL 2716177, at *3 (M.D. Pa. 2019) (Kane, J.) ("the Court cannot construe Petitioner's motion as a motion to amend a [habeas petition] that has already been denied").

### B.    Rule 60

Since the time to amend his dismissed habeas petition has expired, petitioner's new filings can only be construed as Rule 60 motions or a successive habeas petition. See Gonzalez, 545 U.S. at 531-32.[3]

---

[3] Federal Rule of Civil Procedure 59 could not apply because petitioner filed his motions two months after that rule's "fixed 28-day window" expired. Banister v. Davis, 140 S.Ct. 1698, 1710 (2020); accord Fed.R.Civ.P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.").

A proper Rule 60(b) motion "attacks the manner in which the earlier habeas judgment was procured and not the underlying conviction." Pridgen, 380 F.3d at 727. For instance, petitioners commonly invoke Rule 60(b) if new precedent calls the district court's decision on a claim into question. E.g., Bracey v. Superintendent Rockview SCI, 986 F.3d 274 (3d Cir. 2021). "However, when the Rule 60(b) motion seeks to collaterally attack the petitioner's underlying conviction, the motion should be treated as a successive habeas petition." Pridgen, 380 F.3d at 727.

In his habeas petition, petitioner challenged trial counsel's failure to: (1) interview alibi witnesses; (2) object to evidence from a police witness that allegedly implicated petitioner in an unrelated crime; (3) obtain petitioner's medical records and have petitioner examined by an expert; (4) properly communicate a plea offer; (5) develop evidence to impeach one of the Commonwealth's witnesses; and (6) accurately describe reasonable doubt to the jury. He also argued that the cumulative effect of trial counsel's errors justified relief (ECF No. 1). His amended petition added a claim challenging the sufficiency of the evidence (ECF No. 10).

Petitioner now raises two new ineffective assistance claims, unrelated to his prior filings. Specifically, he challenges trial counsel's failure to object to hearsay and evidence of petitioner's reputation for "terrorizing" his neighborhood (ECF No. 47-5, 2). He also argues for the first time that the Commonwealth violated Brady v. Maryland, 373 U.S. 83 (1963), and Napue v. Illinois, 360 U.S. 264 (1959). These new claims challenge petitioner's convictions, not the propriety of this Court's April 6, 2021, decision. Accordingly, Rule 60(b) does not apply.

This means that petitioner's new claims can only be considered a second or successive habeas petition. See Kolosha v. Bear, 645 F. App'x 655 (10th Cir. 2016) (order denying certificate of appealability) (treating a motion to amend the habeas petition – filed after a final judgment was entered, but before the time for appeal had expired – as an unauthorized second or successive

petition); <u>Ochoa v. Simmons</u>, 485 F.3d 538, 539 (10th Cir. 2007) (<u>per curiam</u>) ("the pendency of an appeal from the denial for a first petition does not obviate the need" for new claims to seek authorization to file a second petition); <u>Beaty v. Schriro</u>, 554 F.3d 780, 782 (9th Cir. 2009) (construing claims, raised while appeal was pending, as an application for a second or successive petition); <u>Untied States v. Terrell</u>, 141 F. App'x 849, 852 (11th Cir. 2005) (non-precedential) (affirming the denial of motion filed while an appeal was pending; there was no pending habeas petition "in the district court when Mr. Terrell filed his motion and, hence, there was nothing to amend"); <u>see also</u> <u>Johnson v. United States</u>, 196 F.3d 802, 805 (7th Cir. 1999) ("additional filings in the first collateral attack may be treated as 'second or successive' petitions when the first has reached a final decision").

### C.     United States v. Santarelli

Petitioner cites <u>Santarelli</u> for the proposition that his new claims cannot be considered a second or successive habeas petition (ECF No. 53, 9; ECF No. 47, 26). There, the Third Circuit found that "a subsequent habeas petition is not a 'second or successive' petition when it is filed during the pendency of an appeal of the district court's denial of the petitioner's initial habeas petition." <u>Santarelli</u>, 929 F.3d at 105. Rather, it becomes successive only after the petitioner has exhausted his appellate remedies for his initial habeas petition or the time for an appeal has expired. <u>Id.</u>

However, the Third Circuit's direction on how to handle belated Rule 15 motions shows that it did not contemplate the present scenario. The Third Circuit stated:

> In the event that a petitioner exhausts her appellate remedies to no avail, the district court should refer the "motion to amend" to the court of appeals as a "second or successive" habeas petition because "the petitioner has," at that point, "expended the 'one full opportunity to seek collateral review' that AEDPA ensures."

> If, however, an appellate court vacates or reverses, in whole or in part, the district court's denial of the initial habeas petition and remands the matter – as is the case here – the district court would again be vested with jurisdiction to consider the "motion to amend."

Id. at 106 (citation and internal quotation marks). Thus, the Third Circuit based its decision on the assumption that new claims would not be addressed until after the appeal had been resolved. How the new claims were treated depended not on the mere existence of an appeal, but on *the resolution* of that appeal. Only if the appellate court upset the district court's final judgment by "vacat[ing] or revers[ing]" it would the district court "again be vested with jurisdiction" under Rule 15. Id. This perfectly comports with the Third Circuit's prior decision in Ahmed, 297 F.3d at 207-08 (Rule 15 "is no longer applicable once judgment has been entered").

Santarelli did not address how new claims should be treated if they were returned early to the district court in a case, like this, where the final judgment had *not* been disturbed. There was no need there to address that scenario because Santarelli had a very different procedural posture from petitioner's case. As explained above, in Santarelli, that same Third Circuit opinion had reversed the district court's order for unrelated reasons and remanded the case for further proceedings. Id. at 103. On remand, there would be no final judgment to complicate review under Rule 15. In that context, it was entirely logical to construe Santarelli's filing as a Rule 15 motion.

Here, however, the Third Circuit has not disturbed this Court's final judgment. The Ninth Circuit has distinguished Santarelli on that very ground. Balbuena v. Sullivan, 980 F.3d 619, 637-38 (9th Cir. 2020). There, Balbuena, like petitioner, sought to raise a new claim while his original habeas petition was on appeal. Id. at 634. The Ninth Circuit remanded the case to permit the district court to consider the motion, just like the Third Circuit did here. Id. at 627. On remand, the district court denied the motion as an unauthorized second or successive petition. Id. at 628. Balbuena then argued that the district court should have instead considered that filing "as a motion to amend

his habeas petition," and cited <u>Santarelli</u> in support of his claim. <u>Id.</u> at 634, 637. The Ninth Circuit disagreed. Unlike in <u>Santarelli</u>, the Ninth Circuit had not reversed the order denying Balbuena's original habeas petition; it had simply remanded the case. <u>Id.</u> at 637. Under those circumstances, the Ninth Circuit found that "the district court could not apply Rule 15." <u>Id.</u> at 638.

That is precisely what occurred here. Since petitioner's case has been sent back for no other reason than consideration of a belated filing, it would violate the plain language of Rule 15 to allow petitioner to freely amend a habeas petition that this Court already considered and dismissed.

**3.     If Rule 60 did apply, then petitioner has not met his burden.**

If petitioner's filings are Rule 60(b) motions, they are nonetheless deficient in that they attack his conviction, not the dismissal of his habeas petition. See <u>Pridgen</u>, 380 F.3d at 727. But even ignoring that defect, petitioner has not shown that he would be entitled to relief under Rule 60(b). That rule "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." <u>Gonzalez</u>, 545 U.S. at 528.[4]

---

[4] In full, the Rule provides that, upon motion and "just terms," a federal court may relieve a party from a final judgment for the following reasons:

    (1) mistake, inadvertence, surprise, or excusable neglect;
    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
    (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
    (4) the judgment is void;
    (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
    (6) any other reason that justifies relief.

Fed.R.Civ.P. 60(b).

At first glance, petitioner's <u>Brady</u> and <u>Napue</u> claims could theoretically satisfy Rule 60(b)(2). That subsection allows the court to reopen a judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed.R.Civ.P. 60(b)(2). However, a motion pursuant to Rule 60(b)(2) must be filed "no more than a year after the entry of the . . . order or the date of the proceeding." Fed.R.Civ.P. 60(c)(1). "The one year time limit is not extended by the maintenance of an appeal." <u>Hancock Industries v. Schaeffer</u>, 811 F.2d 225, 239 (3d Cir. 1987) (citation and internal quotation marks omitted). Petitioner filed his motion with this Court almost 14 months after his habeas petition was dismissed. Therefore, if Rule 60(b)(2) governed his <u>Brady</u> and <u>Napue</u> claims, they would be untimely.

There is no obvious portion of Rule 60 that encompasses petitioner's ineffectiveness claims, aside from Rule 60(b)(6). That subsection allows the court to reopen a judgment for "any . . . reason that justifies relief." Fed.R.Civ.P. 60(b)(6). However, in the context of habeas matters, the catch-all language in Rule 60(b)(6) is subject to strict limitations. In order to demonstrate that he is entitled to relief, a petitioner must present evidence of "'extraordinary circumstances' justifying the reopening of a final judgment." <u>Gonzalez</u>, 545 U.S. at 535 (citation omitted). Because of the special considerations of comity and federalism involved in habeas matters, such extraordinary circumstances will only "rarely" occur in habeas cases. <u>Id.</u>

Here, petitioner assumes that his prior habeas counsel, Teri Himebaugh, Esquire, failed to recognize the ineffectiveness claims because she was allegedly missing one of the trial transcripts (ECF No. 47, 6-7). However, the fact that the transcript was not in the file she transmitted years after PCRA proceedings does not necessarily mean Ms. Himebaugh never reviewed the transcript. In her amended habeas petition, Ms. Himebaugh did discuss McMillan's testimony (ECF No. 10,

48-49, 94), which petitioner claims was transcribed on the missing volume (ECF No. 47, 6).[5] She also summarized McMillan's police statement (ECF No. 10, 47-48). That police statement contained both the hearsay and other crimes evidence petitioner now challenges. Her apparent familiarity with McMillan's testimony undermines the suggestion that she never read it.[6] While "gross negligence" by counsel can be an "extraordinary circumstance" justifying relief under Rule 60(b)(6), In re Subramanian, 245 F. App'x 111, 117 (3d Cir. 2007) (non-precedential), petitioner's mere assumption that his prior counsel failed to review the full record does not prove that counsel was grossly negligent. Nor does it explain why petitioner failed to raise the claims himself in his *pro se* habeas petition (the only timely petition).

> **4.   If Rule 15 did apply, then allowing petitioner to raise a new ineffectiveness claim would be futile because that claim is untimely. However, his remaining claims would arguably be timely.**

Even assuming, *arguendo*, that Rule 15 did apply, granting petitioner leave to raise new ineffective assistance claims would be futile because they would be time-barred.[7] However, to the extent that his remaining claims could not have been discovered earlier through the exercise of due diligence, those claims would be timely.

---

[5]   To clarify, although petitioner claims that Ms. Himebaugh could not have raised the ineffectiveness claims due to a "conflict of interest" (ECF No. 47, 20), he does not allege that the conflict of the interest was the reason why she failed to raise the claims. Rather, his own argument suggests that Ms. Himebaugh was simply unaware of the claims because she was missing one transcript.

[6]   The undersigned does not have a copy of petitioner's PCRA filings and therefore cannot attest to how extensively Ms. Himebaugh discussed McMillan in the PCRA court.

[7]   Of course, if the respondents waive untimeliness, this Court is not bound by that concession. As the Third Circuit has stated, the idea that "AEDPA's statute of limitations is the government's alone to use or lose" has "no authority." U.S. v. Bendolph, 409 F.3d 155, 166 (3d Cir. 2005). The Third Circuit "doubt[ed] that Congress intended to relegate the efficacy of its [AEDPA] reforms to the vagaries of a prosecutor's decisions." Id. Accordingly, even in cases of "intentional waiver," this Court may raise untimeliness *sua sponte*. Id. at 168 n.20.

The Federal Rules of Civil Procedure provide that a party may amend his pleading once "as a matter of course" within 21 days of serving that pleading. Fed.R.Civ.P. 15(a)(1)(A). After that, amendments may occur only by agreement of the opposing party or by leave of the court. Fed.R.Civ.P. 15(a)(2). While leave to amend should be "freely" given "when justice so requires," id., leave should be denied if the amendment would be futile. City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878 (3d Cir. 2018).

A time-barred amendment is a classic example of a futile claim. AEDPA includes a strict, one-year time limitation on the filing of new petitions:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)     the date which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

"[T]he limitation period is subject to both statutory and equitable tolling." Jenkins v. Superintendent of Laurel Highlands, 705 F.3d 80, 85 (3d Cir. 2013). Statutory tolling refers to "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Equitable tolling applies "when the principles of equity would make the rigid application of a

limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights." Schlueter v. Varner, 384 F.3d 69, 76 (3d Cir. 2004) (citation omitted).

Actual innocence, if proved, may also excuse compliance with the statute of limitations. McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). To successfully invoke the actual innocence exception, a petitioner "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt'." House v. Bell, 547 U.S. 518, 536-537 (2006) (citation omitted). This "demanding" standard "permits review only in the extraordinary case." Id. at 538 (internal quotation marks and citations omitted).

Timeliness is determined "on a claim-by-claim basis." Fielder v. Varner, 379 F.3d 113, 118 (3d Cir. 2004). Thus, the one-year statute of limitations applies not just to a defendant's initial habeas petition, but also to any claims he later seeks to add to the petition. See United States v. Duffus, 174 F.3d 333, 337-38 (3d Cir. 1999) (to allow a petitioner "to assert a claim otherwise barred by the statute of limitations merely because he asserted a separate claim within the limitations period" would "frustrat[e] the intent of Congress").[8]

As the magistrate judge explained, petitioner's judgment of sentence became final on November 23, 2016 (ECF No. 23, 13). 208 days later, he filed a PCRA petition in state court (id.). That petition tolled AEDPA's statute of limitations until May 16, 2019, when the time for seeking discretionary review in the Pennsylvania Supreme Court expired (id.). "At that point, [petitioner] had 157 days – until October 21, 2019 – to present his claims" in federal court" (id.).

---

[8] New claims may be added after the expiration of the time-bar if they "relate back" to the timely-filed claims. Fed.R.Civ.P. 15(c). However, as explained in Section I, petitioner's new claims are not related to any of the claims raised in his initial habeas petition. Indeed, petitioner has not alleged that his new claims relate back to his initial habeas claims (ECF No. 47, 19; ECF No. 53, 7).

Petitioner first presented his new claims to the Third Circuit on September 14, 2021, and September 30, 2021, almost two years after that filing deadline had expired. Therefore, even if that were sufficient, his new claims would be at least facially untimely. To obtain review, petitioner must show that: (1) he is entitled to equitable tolling; (2) he has new evidence of his actual innocence; or (3) the statute of limitations began to run on a different date.

### A.    Ineffective Assistance of Counsel

In his first motion to amend, petitioner challenges trial counsel's failure to object to hearsay and other crimes evidence. He also argues that PCRA counsel's alleged ineffectiveness in failing to raise the claims excuses the default (ECF No. 47-5, 1-16). Equitable tolling does not salvage these untimely claims.

AEDPA's statute of limitations may be equitably tolled "only if [a petitioner] shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing. Holland v. Florida, 560 U.S. 631, 649 (2010) (citation and internal quotation marks omitted); see also Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) (cautioning that equitable tolling is applied "only sparingly" and does not extend to "a garden variety claim of excusable neglect").

Petitioner does not allege that any such extraordinary circumstances impeded him here. Instead, he claims that the ineffectiveness of his prior habeas counsel justifies equitable tolling (ECF No. 47, 20). Since Ms. Himebaugh also represented petitioner before the PCRA court, she could not have raised the instant claims without alleging her own ineffectiveness (id. at 21). Ordinarily, in non-capital cases, "attorney error" is not an "extraordinary circumstance" justifying equitable tolling. Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001). Although there are exceptions to that rule, see Christeson v. Roper, 574 U.S. 373, 378 (2015), petitioner's argument ignores the

16

fact that he, not Ms. Himebaugh, filed the initial habeas petition. By the time Ms. Himebaugh filed

an amended petition on November 13, 2019, AEDPA's statute of limitations had already expired.

Accordingly, even if Ms. Himebaugh at that point had instead withdrawn from the case based on

the perceived conflict of interest, it would have been too late for any new counsel petitioner

retained to timely file the claims.[9]

Petitioner offers no explanation for why he failed to raise the ineffective assistance claims

in his *pro se* habeas petition. His mere failure as a *pro se* petitioner to recognize the claims does

not justify equitable tolling. See Ross v. Varano, 712 F.3d 784, 800 (3d Cir. 2013) (*pro se*

petitioner's "lack of legal knowledge or legal training does not alone justify equitable tolling").[10]

Since petitioner has not alleged that he can meet the actual innocence exception (ECF No. 47, 19-

24), his newfound ineffective assistance claims would be untimely. Allowing petitioner to amend

his habeas petition to raise those two claims would be futile.

### B.     Dasaahn McMillan's Cooperation

In his first motion to amend, petitioner also challenges the Commonwealth's failure to

disclose an alleged deal made with McMillan and the Commonwealth's failure to correct

McMillan's testimony denying a deal (ECF No. 47-5, 17-25). He does not argue that he is entitled

to equitable tolling on those claims or that he can establish actual innocence. Instead, he argues

---

[9] Even if Ms. Himebaugh had identified the conflict of interest the day that petitioner retained her, there is no reason to believe that any new attorney petitioner hired – who (unlike Ms. Himebaugh) would have been unfamiliar with the case – would have been able to file an amended habeas petition sooner.

[10] To the extent petitioner alleges that he never received a copy of the April 22, 2015, transcript (Third Circuit Docket, ECF No. 14, 10), this does not justify equitable tolling. Since petitioner was present at his trial, it should have been obvious to him if he was missing an entire day's transcript. Accordingly, at a minimum, the absence of the transcript is an issue he could have presented earlier to this Court.

that the statute of limitations should instead run "from July 30, 2021, the date on which the Commonwealth disclosed McMillan's file" to petitioner (ECF No. 47, 24).

This would arguably make his claim timely. The Third Circuit has said that claims based on <u>Brady</u> evidence may be "timely under § 2244(d)(1)(D)." <u>Bracey</u>, 986 F.3d at 293. That subsection starts the statute of limitations on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Assuming, *arguendo*, that petitioner could not have discovered McMillan's alleged deal any earlier than July 30, 2021, AEDPA's statute of limitations did not expire for the McMillan claims until Monday, August 1, 2022; three weeks *after* petitioner filed the relevant motion to amend. Under such a scenario, his claims would be timely.[11]

However, petitioner's claims regarding McMillan might be procedurally defaulted. When petitioner filed his first motion to amend his habeas petition, he indicated that he could still exhaust claims relating to McMillan in state court (ECF No. 47, 18). Since the PCRA requires any petitions to be presented within one year of the date that the claim could have been presented (by petitioner's argument, July 30, 2021), 42 Pa.C.S. § 9545(b)(2), one might expect petitioner to have filed a simultaneous PCRA petition in state court. However, more than one year later, the state court docket mentions no such filing (Court of Common Pleas Docket No. CP-51-CR-0003070-2014). One of petitioner's current habeas attorneys entered his appearance in state court on June 24, 2021, just one month before he discovered these new claims. But, if the state court docket is correct, he has filed nothing since (<u>id.</u>).

---

[11] It is unclear from the record why petitioner's prior habeas counsel did not request access to the Philadelphia District Attorney's Office's file.

## C.      Failure to Disclose Other Suspects

In his second motion to amend, petitioner alleges that the Commonwealth suppressed evidence implicating other people in the murder (ECF No. 53-1, 14). He argues that the statute of limitations should begin to run "from March 10, 2022, the date on which the Commonwealth disclosed the H-File" to petitioner (ECF No. 53, 7).

Assuming that petitioner's facts are correct, this would arguably make his claim timely under Section 2244(d)(1)(D). Using that start date, AEDPA's statute of limitations would not expire for petitioner's newest Brady claim until March 10, 2023; five months *after* he filed the relevant motion to amend.[12] See Bracey, supra.

## CONCLUSION

For the foregoing reasons, the Pennsylvania District Attorneys Association submits that petitioner's motions should be dismissed as unauthorized second or successive habeas petitions.

Respectfully submitted,

*Kelly Wear*

KELLY WEAR
*Assistant District Attorney*
Delaware County District Attorney's Office

KEVIN R. STEELE
*President*
Pennsylvania District Attorneys Association

---

[12] Petitioner hypothetically would still have time to exhaust this Brady claim.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RASEAN MALONE,** | : | **CIVIL ACTION** |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SUPERINTENDENT BARRY SMITH,** *et al.* | : | **No. 19-2800** |
| **Respondents.** | : | |

### WORD COUNT CERTIFICATION

I, KELLY WEAR, counsel for amicus curiae, hereby certify that the foregoing Brief for Amicus Curiae contains 6,187 words.

Respectfully submitted,

*Kelly Wear*
KELLY WEAR
*Assistant District Attorney*
Delaware County District Attorney's Office

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RASEAN MALONE,** | : | **CIVIL ACTION** |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| **SUPERINTENDENT BARRY SMITH,** *et al.* | : | No. 19-2800 |
| Respondents. | : | |

## CERTIFICATE OF SERVICE

I, KELLY WEAR, counsel for amicus curiae, hereby certify that on January 20, 2023, a copy of the foregoing was served electronically via this Court's electronic filing system on petitioner's counsel, Michael Wiseman, Esquire, and respondents' counsel, Jaclyn M. Mason, Esquire.

Respectfully submitted,

*Kelly Wear*

KELLY WEAR
*Assistant District Attorney*
Delaware County District Attorney's Office